**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gregory SYKES, Defendant-Appellant.**

**No. 38965.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 25, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Allan M. Goodloe, Jr., Paul E. Corning, Jr., Clayton, for defendant-appellant.

John M. Morris, III, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Gregory Sykes appeals from a conviction entered in accordance with a jury verdict finding him guilty of robbery in the first degree and sentencing him to imprisonment for a period of fifteen years. Defendant contends that the trial court erred in (1) failing to grant a mistrial when the prosecutor asked allegedly improper questions of him on cross-examination; (2) failing to grant a mistrial when the prosecutor incorrectly stated facts in the closing argument; and (3) admitting into evidence a photograph of a lineup without proper foundation. We find appellant's contentions to be without sufficient merit to disturb the judgment and, accordingly, affirm.

Defendant does not attack the sufficiency of the evidence; we therefore set forth only such facts as are necessary to dispose of his points. Mr. Carrol Pashea, the owner-manager of a Quick Shop store located at 9138 West Florissant, Ferguson, Missouri, testified that at 10:15 a. m. on March 2, 1976, defendant entered his store, displayed a revolver, and demanded the money in the two cash registers and the safe. In "fear of being shot" Pashea surrendered the money, totaling $500 to $600, to the defendant. In accordance with a further order from the defendant "to lay down on the bathroom floor for ten minutes and don't come out until then," Pashea stayed in that room for a few minutes. When he emerged, the defendant was gone. A woman, Gloria Restivo, was using the telephone. He asked her to relinquish the use of the phone so that he could report the robbery. Mrs. Restivo identified defendant as a man she saw

leaving the Quick Shop as she parked her automobile in front of it.

On March 10, 1976 defendant was taken into custody in the City of St. Louis by two Ferguson police officers, Detectives Nelson and Bortz, and was taken to the Ferguson police station where he was booked, photographed in a lineup, and advised of his *Miranda* rights. He gave both an oral and written statement admitting the commission of the robbery. At the time defendant was apprehended he had in his possession a pistol, which the police seized. A defense motion to suppress all physical evidence seized at the time of arrest was sustained prior to the swearing of the jury.

Testifying in his own behalf, defendant admitted that he was then serving thirty-five years in sentences imposed for robberies of other Quick Shops to which he had confessed after his arrest but steadfastly maintains his innocence of this particular crime. He conceded that he had signed the written statement which had been placed in evidence but denied its truthfulness, saying that he had given it in order to cooperate with the police. A portion of the statement reads, "I pulled the pistol . . ." On direct examination, defendant stated that his reference to the gun was "just something that I thought of." On cross-examination, the following occurred which gives rise to defendant's first assignment of error:

"Q (by Mr. Robyn): At the time you were arrested in the City of St. Louis what did you have on your person?

MR. GOODLOE: Objection; irrelevant and immaterial.

MR. ROBYN: May I finish the question?

THE COURT: Let him finish the question.

MR. GOODLOE: Okay.

MR. ROBYN: Don't answer until the Judge has ruled, but let me ask my question.

Q What did you have on your person that Detective Nelson took away from you?

MR. GOODLOE: Objection; assumes facts not in evidence. It's already been ruled on.

THE COURT: I will sustain the objection.

MR. GOODLOE: Improper question. At this time I would like to ask for a mistrial. I'd like to approach the Bench on it."

There then followed a colloquy at the bench out of the hearing of the jury during which the court reiterated that it was sustaining the objection but denying the request for a mistrial. The cross-examination then resumed:

"Q (by Mr. Robyn): Now you indicated when you wrote in that statement 'I pulled a gun', that was something you thought of. Right?

A Yes.

Q Something that you thought of, not that the officer told you to put in there. It was something that you thought of. Correct?

A Yes."

■■■ Defendant argues that the prosecutor's unanswered question concerning what the the arresting officer "took away" from him, in light of the prior ruling on the motion to suppress, required a mistrial. The superior opportunity of a trial judge to assess whether occurrences at trial prejudice a defendant's rights has often been recognized, and an appellate court may not disturb the lower court's denial of a motion for mistrial unless the ruling constitutes an abuse of discretion. *State v. Brown,* 554 S.W.2d 574, 579 (Mo.App.1977); *State v. Harris,* 535 S.W.2d 145, 150 (Mo.App.1976); *State v. Few,* 530 S.W.2d 411, 414 (Mo.App. 1975). In view of the fact that the trial court had granted the motion to suppress evidence seized at the time of the arrest, the mere asking of the question may have bordered on prosecutorial impropriety. However, the objection was sustained; the question was not answered. It cannot be said as a matter of law that the prosecutor's conduct deprived defendant of a fair trial. Therefore, we cannot hold that the trial court abused its discretion in denying the request for a mistrial. *Cf. State v. Morgan,* 546 S.W.2d 207, 209 (Mo.App.1977).

Defendant also contends, in connection with his first point, that the effect of the questions relating to what occurred at the time of his arrest was exacerbated by the fact of their juxtaposition to the questions concerning how he happened to refer to a gun in his written statement. In oral argument, his able counsel stated that the change of subject matter was a blatant effort to suggest to the jury that the defendant was carrying a gun at the time of his arrest. Such argument is tenuous at best. The jury had heard the court sustain the objection to questions concerning the arrest and had seen the colloquy at the bench. The jury could well have concluded that, having had one avenue of cross-examination foreclosed, the prosecutor was exploring a new unrelated area, albeit one that had been opened up during direct examination. However, we need not speculate, for defense counsel failed to object or renew his request for a mistrial; and the trial court did not see fit to invoke any curative measures *sua sponte.* As discussed above, we defer to the trial court's assessment and hold the point to be without merit.

▪ Appellant's second point arises out of the following portion of the closing argument on behalf of the state:

"MR. ROBYN: . . . And Gregory Sykes himself tells you: 'I am the man that did it.'

MR. GOODLOE: I will object. He never stated that. That's a complete falsehood, and I ask for a mistrial, if he is going to misstate testimony that blatantly.

THE COURT: I'll overrule the request for a mistrial. The jury will recall what the evidence was.

MR. ROBYN: When you get back there you remember what Nelson told you. He said orally, and you read what he said in his written statement, 'and then I pulled the pistol on the man and said "empty the cash register and open the safe and give me the money."' You read it and see if I have distorted it."

Defendant contends that the prosecutor's statement "And Gregory Sykes himself tells you: 'I am the man that did it,'" constitutes a prejudicial misstatement of the evidence that the trial court erred in failing to grant a mistrial and in failing to take sufficient curative measures. Applying the standards discussed in connection with the first point, we find no abuse of discretion in the denial of the request for a mistrial and hold that the court's admonition that "The jury will recall what the evidence was," constituted an adequate "curative measure" to dispel any possibility of confusion caused by the prosecutor's statement. See *State v. Coleman,* 441 S.W.2d 46, 53 (Mo.1969). In light of the fact that the defendant testified at length that he did not commit the crime, the jury could not have been misled by the prosecutor's statement. Furthermore, the prosecutor's words immediately following the court's ruling demonstrate beyond question that he was not making reference to the defendant's testimony, but rather to the oral and written statements given by the defendant to the police at the time of his arrest. We rule the point against the defendant.

▪ Defendant's final assignment of error relates to the admission into evidence of a photograph of defendant in a lineup with five other persons. Both Mr. Pashea and Mrs. Restivo testified that when Detective Nelson visited them separately each pointed out the defendant, the second man from the right, as the man who committed the robbery (Pashea) or the man seen leaving the Quick Shop (Restivo). Defendant contends that no proper foundation was laid for admission of the photograph in that no one testified that it was a fair and accurate representation of the lineup or of the way the defendant looked at any given time, and no one described the circumstances under which it was taken. A review of the transcript refutes defendant's contentions in this regard. Ferguson Police Officer Lee Hackworth identified the photograph on the basis that he "took" it at the Ferguson police station on March 10, 1976, the date of defendant's arrest. Detective Nelson testified as to how the participants were positioned in the lineup, that the photograph

depicted "exactly" what a person would see looking through the window at the lineup room, and that the six persons in the lineup appeared "as the photograph shows". Although it perhaps would have been more conventional practice to have elicited such evidence at one point in the trial so as to obviate the necessity for a line-by-line search of the transcript, all evidence which defendant claims necessary to qualify the photograph appears.

As identifying witnesses, Mr. Pashea and Mrs. Restivo could both properly testify to their extrajudicial identification of the defendant from the photograph. *State v. Degraffenreid*, 477 S.W.2d 57, 62[12] (Mo.banc 1972). The photograph itself then became relevant and material on the issue of the identification by the witnesses and was properly admitted into evidence. *State v. Jenkins*, 516 S.W.2d 522, 526[10, 11] (Mo. App.1975); *State v. Holmes*, 389 S.W.2d 30, 34[5] (Mo.1965).

The judgment is affirmed.

STEWART, P. J., and REINHARD, J., concur.