STATE of Missouri,
Plaintiff-Respondent,

v.

Benny HURST, Defendant-Appellant.

No. 42235.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 17, 1981.

---

848

Buechner & Hellman, Andrew B. Leonard, Manchester, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Edward F. Downey, Asst. Attys. Gen., Jefferson City, George Westfall, Pros. Atty., Clayton, for plaintiff-respondent.

WEIER, Judge.

Defendant appeals his conviction of forcible rape and a sentence of ten years imprisonment. A brief statement of the facts will be made. Further facts will be developed in the body of this opinion.

On the night of September 25, 1978, complainant was the victim of multiple rapes accompanied by a physical assault upon her person. On her way home after attending school at Meramec Community College, she had stopped to purchase cigarettes at a liquor store on Lindbergh near Big Bend. Approximately seven men were standing in front of the store. When she emerged from her car, one of the men grabbed her purse. Two of the men forced her to drive to a deserted area in Meachum Park where they raped her. They then took her back to the liquor store where they left the car and a third man forced her back to the same spot and raped her. The third man then directed her to a gas station lot. She testified that while at the gas station lot defendant drove up in a silver blue Monte Carlo and approached her trying to sell her some "acid." She further testified that the third man left the car and defendant Benny Hurst then entered. He forced her to drive back to the same deserted area where he also raped her. She then managed to escape. Defendant denied the rape and testified that he was with his girl friend all night.

Defendant assigns sixteen points of trial court error. We affirm the trial court on all points.

Defendant's first point on appeal is that the trial court erred in overruling the motion to suppress the identification testimony given by the victim because the pretrial

confrontation procedures were so unnecessarily suggestive and conducive to a misidentification of defendant as to violate due process rights. Defendant also contends that the subsequent in-court identification was tainted because it was based on the same suggestive influence as the tainted lineup and viewing of photographs in the Kirkwood Police Station.

■ Initially, we note that defendant has failed to properly preserve this point for review because he neglected to object to the victim's identification testimony at trial. *State v. Perry*, 592 S.W.2d 307, 308[2] (Mo. App.1979). Regardless, we have reviewed the record and find that the trial court did not err in overruling defendant's motion to suppress identification testimony.

■ The admissibility of identification testimony is determined in light of the totality of surrounding circumstances. *State v. Parker*, 458 S.W.2d 241, 244 (Mo.1970). In viewing the totality of circumstances, a three-part test requires that consideration be given to (1) the presence of an independent basis of identification, (2) the absence of any suggestive influence by others, and (3) positive courtroom identification. *Parker, supra* at 244.

The second factor enumerated in *Parker, supra,* is most applicable to the pretrial procedures attacked by defendant—that is, the lineup and the showing of photographs of potential suspects to the victim. In the early morning hours of September 26, 1978, the victim viewed several books of photographs of potential suspects. She identified defendant as one of the men who raped her. Later on in the day she viewed a five-man lineup at the jail in Clayton and identified defendant as one of the men who raped her. Defendant contends that the lineup was unduly suggestive because none of the other participants had features similar to defendant. Noticeable differences in the appearance of participants in the lineup have repeatedly been held not to necessitate a finding of suggestiveness. *State v. Davis,*

529 S.W.2d 10, 13[2, 3] (Mo.App.1975). An examination of the photographs of this lineup does not support defendant's claim that the lineup was unduly suggestive. Neither does the record show the two identification procedures attacked by defendant were made as a result of suggestive acts or comments by police officers.

■ Defendant also contends that the first and third factors of the *Parker* test, involving an independent source of identification and positive in-court identification, were not met as well. Identification testimony is admissible even if the lineup and viewing of the photographs were suggestive because the presence of an independent source will serve to remove any taint that might result from a suggestive confrontation. *Davis, supra* at 14. Isolation of an independent source requires consideration of numerous factors including:

> " '... the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' (*Neil v. Biggers,* supra 409 U.S. [188] at p. 199, 93 S.Ct. [375] at p. 382 [34 L.Ed.2d 401])"

*Davis,* supra at 14.

■ Applying this test to the present case shows an independent source. The description given to the police was not detailed but there was no hesitancy in the identification at the lineup. Neither was there any hesitancy in picking out the photograph of the appellant at the police station. The record shows that the victim had ample opportunity to view the defendant at the time of the incident. She testified he approached her car trying to sell her a bottle of "acid" and that he entered her car and forced her to drive to the isolated spot where he raped her. She was absolutely certain of the in-court identification. Fi-

nally, it was less than twenty-four hours after the incident that the victim viewed the defendant in the lineup and less than twelve hours when she viewed the defendant's photograph.

Defendant's second point on appeal is that the trial court abused its discretion in overruling defendant's motion for a continuance in that a series of articles on rape appeared in the St. Louis Post-Dispatch newspaper immediately prior to trial. The articles did not concern this case but referred to rape in general terms and described typical rape situations and the emotional trauma connected therewith.

 It should be noted that defendant's motion was in the alternative in that he requested a continuance or sequestration of the jury. The court did, in fact, sequester the jury. In order to preserve an allegation of error, proper objection must be promptly made and there must be an adverse ruling. *State v. Holland*, 530 S.W.2d 730, 733[2, 3] (Mo.App.1975). Having granted alternative relief as requested, defendant cannot now claim that the trial court abused its discretion. Considering the merits of this point on appeal, however, defendant is required to demonstrate that pretrial publicity has had a prejudicial effect on the jury panel. *State v. Owens*, 537 S.W.2d 209, 210[3] (Mo.App.1976). Defendant has not shown such prejudice. When asked by defense counsel whether any of the prospective jurors who had read something about rape would be able to reach a verdict in this case based solely on evidence presented in the courtroom, all jurors indicated they could set aside their preconceived notions. Further, the jurors indicated to the prosecution that they would presume defendant innocent unless proven guilty. Defendant's claim, therefore, that the jurors were prejudiced by pretrial publicity is without merit.

Defendant assigns error to the trial court in overruling his objection to the prosecutor's statements during voir dire regarding "reasonable doubt." The remarks to which complaint is directed are:

Prosecutor:

"The burden of proof that the State has is we must establish Hurst guilty beyond a reasonable doubt. Notice I did not say slight, any doubt or all doubt, I said reasonable doubt."

\* \* \* \* \* \*

"Another thing I want to mention, the State has what we call the burden of proof in any criminal case. What that means is it is on the State to establish Hurst guilty, not on Hurst to establish his innocence. And we have to establish Hurst guilty beyond a reasonable doubt."

"Now notice I didn't say beyond any doubt or beyond all doubt."

Objections to both set of statements were overruled.

 It was improper for the prosecutor to tell the panel on voir dire examination that burden of proof rests upon the State and to differentiate between beyond a reasonable doubt and beyond any and all doubt. *State v. Van*, 543 S.W.2d 827, 830[1, 2] (Mo.App.1976). It is elementary that instructing the jury on the burden of proof is a function of the trial judge. As a general rule, error is presumed to be prejudicial, and it is the duty of this court to determine judicially whether under the facts of this case defendant was prejudiced. *Id.* We do not find, however, that prejudice resulted. Although the statements were improperly made, what the prosecutor said was essentially correct. It is true that in order to convict the State must prove an accused guilty beyond a reasonable doubt and that the State has no higher or greater burden of proof. *State v. Van, supra* at 830[3, 5]; *State v. Belleville*, 530 S.W.2d 392, 394[4] (Mo.App.1975).

In his fourth point defendant contends that the trial court erred in overruling his objection to the prosecutor's statement during voir dire concerning the purse snatching which preceded the series of rapes and a

reference to a false police report filed by a witness endorsed by defendant. An examination of the record shows that the trial court sustained the objection and instructed the jurors to disregard the statement. Defendant's fourth point is without merit.

 In his fifth point on appeal defendant contends that the trial court erred in limiting defense questioning during voir dire. Specifically, defendant argues that he was not given ample opportunity to rehabilitate one venirewoman who stated that she could not sit fairly and impartially as a juror because the defendant was black and the victim was white. Further, defendant contends that his individual questioning of several prospective jurors who had indicated a prejudice regarding race and the crime of rape was erroneously limited by the trial court. The trial court has considerable discretion in the control of voir dire examination and the appellate court will interfere only when the record shows a manifest abuse of that discretion. *State v. Mudgett*, 531 S.W.2d 275, 279[2] (Mo. banc 1975). Nothing approaching an abuse of discretion appears in the present case.

 Defendant's contention that he was not given ample opportunity to rehabilitate a member of the panel is without merit. One venirewoman was excused at the prosecutor's request after defense interrogation. The record discloses that defendant asked this panel member a number of questions regarding prejudice. We find no error in limiting rehabilitation. After the trial court limited defendant's voir dire of the panel on the topic of rape, all of the individuals who had read something about this crime indicated to defendant that they could reach a verdict based solely on the evidence and that they would set aside any preconceived notions they held regarding the crime of rape.

 Defendant's sixth point on appeal contends that the trial court erred in limiting his opening statement, particularly in the area of credibility of the State's witnesses. The primary purpose of the opening statement is to inform the court and the jury in a general way of the nature of the case, an outline of the anticipated proof and the significance of the evidence as it is presented. The purpose is not to test the sufficiency or the competency of the evidence. *State v. Fleming*, 523 S.W.2d 849, 852[1] (Mo.App.1975). An examination of the record shows that comments made by defendant during opening statement were argumentative and we find no trial court error in limiting defendant's opening statement as to what the evidence would show.

 For his seventh point defendant contends that the trial court erred in admitting into evidence over his objection during cross-examination of defendant photographs of a lineup which did not include the defendant. Defendant claims the admission of these photographs exceeded the scope of cross-examination in that they did not relate to any evidence presented by defendant during direct examination and that they presented a collateral issue to the jury thus denying defendant a fair trial. It is well established in Missouri that the trial court has wide discretion in determining the permissible scope of cross-examination, especially as to matters of impeachment. *State v. Richards*, 536 S.W.2d 779, 787[12] (Mo. App.1976). A defendant who takes the witness stand may be contradicted and impeached as any other witness. Questions designed to test the defendant's memory or the accuracy of his testimony are not subject to the requirement that they be limited to the scope of direct examination. *State v. Rapheld*, 587 S.W.2d 881, 892[22–24] (Mo. App.1979). A court should, however, on objection being made limit certain cross-examination of a defendant where the cross-examination is purely collateral as to general credibility and its nature is such as to impair the defendant's right to a fair trial on the charges brought against him. *State v. Dunn*, 577 S.W.2d 649, 653[1] (Mo. banc 1979). We do not find that the admission

of these photographs exceeded the scope of cross-examination or presented a collateral issue to the jury. Defendant's defense rested on his misidentification by the victim. He testified on direct that he had not raped the victim. The victim earlier had positively identified defendant as one of her assailants. During cross-examination defendant voluntarily testified that he resembled James Greer. Greer appeared in the lineup, the photograph of which was introduced into evidence. Admission of these photographs tended to impeach the statement of defendant that he resembled James Greer and to discredit defendant's defense of misidentification.

Defendant further contends that the court erred by admitting State's exhibit nine and ten into evidence. These were photographs depicting defendant in a lineup with four other black males. Defendant asserts that the issue of identification had been raised in a motion to suppress, which was overruled; and therefore, these exhibits were irrelevant to the trial. Defendant also asserts that these exhibits suggested the criminality of the defendant to the jury and were cumulative due to the victim's prior in-court identification. The trial court has wide discretion in admitting photographs into evidence and error is only found when that discretion is abused. *Holtkamp v. State*, 588 S.W.2d 183, 189[16] (Mo.App.1979). Photographs are generally held material and admissible if in the judgment of the trial court they are relevant to a material issue. *Id.* at 190. In order for evidence to be relevant it must logically tend to support or establish a fact or issue between the parties. In the present case defendant pleaded not guilty to the crime of rape and therefore all facts concerning the elements of the crime were in issue. *State v. Moore*, 435 S.W.2d 8, 11[3] (Mo. banc 1968). The State had to prove beyond a reasonable doubt that appellant committed the crime of rape. The defense was based upon misidentification of defendant as one of the victim's assailants. In

presenting evidence that the victim had identified defendant in a lineup within hours after the rape and by introducing a photograph of that lineup, the State was able to show the jury that the victim selected the defendant as one of her assailants out of a group who had similar characteristics. This evidence also supported the victim's in-court identification of defendant. *State v. Sykes*, 571 S.W.2d 456, 459[4] (Mo. App.1978). The charge that such evidence was cumulative attacks the exercise of discretion by the trial court. We find no abuse, particularly when, as here, relevance is the main criterion. *State v. Johnson*, 539 S.W.2d 493, 517[59] (Mo.App.1976).

Defendant's ninth point on appeal contends that the trial court erred in overruling his motion for a mistrial based on the response of Officer Whaley that he had shown the victim photographs of "previously arrested subjects" and further that the trial court erred in failing to instruct the jury to disregard this testimony for the reason that such evidence was adduced despite defendant's sustained motion in limine which dealt with this precise issue. The granting of a mistrial is a remedy so drastic that it is reserved for only those cases where the error committed during the course of the trial is so grievous and prejudical that its effect cannot be removed in any other way. For that reason the granting of a mistrial rests largely in the discretion of the trial court, and an appellate court is reluctant to disturb the ruling of the trial court denying a motion for mistrial except where the trial court has abused its discretion. *State v. Graham*, 527 S.W.2d 936, 942[1–2] (Mo.App.1975). An examination of this testimony shows that Officer Whaley's remarks were not responsive to the prosecutor's question. Defendant moved for a mistrial but did not request the trial court to instruct the jury to disregard the answer. The prosecutor suggested this approach to the court but defendant stated: "Your honor, the damage has already been done. There is no removing it from the

jurors' minds." The court took defendant's motion for a mistrial under submission and reserved its ruling. The following day the trial court denied said motion. Defendant did not request the trial court at this time to instruct the jury to disregard Officer Whaley's statement. Based on this record, we find no trial court error in denying defendant's motion for a mistrial.

Defendant further contends in his ninth point that Officer Whaley's testimony violated the sustained portion of his motion in limine which prohibited any comments regarding mug shots or soliciting any reference to a criminally related background concerning identification photographs. An examination of the record shows, however, that the trial court sustained only that portion of defendant's motion in limine to eliminate any indications on the photograph of defendant that it was a mug shot. Defendant's ninth point is denied.

Defendant's tenth point assigns error to the trial court's admission over objection of the testimony of Officer Nancy Hightshoe and the victim concerning identification of the vehicle and residence of defendant. Defendant contends that the evidence was adduced without a proper foundation and was highly inflammatory. An examination of the record on appeal shows that defendant objected at trial on the grounds that the question stated a conclusion, assumed facts not in evidence, that the question called for hearsay and was leading. Objections to testimony must be specific and give a valid reason so that the trial court is afforded an opportunity to rule on the point. Further, the point raised upon appeal must be based upon the theory of the objection as made at trial. *State v. Lang*, 515 S.W.2d 507, 511[6, 8] (Mo.1974). In the present case defendant seeks review based on different objections than those raised at trial. He, therefore, has failed to preserve this point for review and it must be denied.

In his next point defendant contends the trial court erred in permitting the prosecutor over objection to solicit testimony from the victim regarding the other rapes and physical assault because such testimony was irrelevant and immaterial as it was evidence of other crimes to which defendant was not a party. As a general rule, evidence which tends to prove other crimes is inadmissible. This general rule of exclusion, however, does not apply when there is no evidence linking the accused with the other crimes. *State v. Jones*, 523 S.W.2d 152, 155[5, 6] (Mo.App.1975). In the present case the victim testified that she was over a period of several hours raped by four black men and physically assaulted by a fifth. She identified defendant as the fourth man who raped her. Her testimony did not implicate the defendant with the other rapes. Defendant contends, however, that evidence regarding separate and distinct crimes by others is also inadmissible. Statements or acts of third persons preceding the crime charged are admissible in evidence, however, when they are so closely connected with the crime as to constitute a part of the *res gestae*. If it is not part of *res gestae*, then it is irrelevant and hence not prejudicial. *State v. Talbert*, 454 S.W.2d 1, 3[2] (Mo.1970). For an act to be considered part of the *res gestae*, the act must be substantially contemporaneous with the commission of the crime and it must occur in the same transaction as the crime. *State v. Nylon*, 563 S.W.2d 540, 542[5] (Mo.App.1978). On the facts of this case, we find that the acts of the other four men were so closely connected to the instant crime as to constitute a part of the *res gestae*. The testimony was, therefore, admissible.

In his twelfth point defendant contends that the trial court erred in overruling his motion for mistrial after the testimony of Dr. Bruce Bryan, the victim's examining physician. Defendant also contends that the State's attorney committed prosecutorial misconduct when he asked Dr. Bryan the following question:

Prosecutor:

"And did she tell you that she had been raped?"

Dr. Bryan:

"Yes, she did."

Defendant objected to the leading form of the question. The objection was sustained. Defendant then requested a mistrial which was overruled. Defendant had, prior to the testimony of Dr. Bryan, made a motion in limine in which he requested the trial court to instruct the prosecutor to inform Dr. Bryan that he should not base his medical diagnosis on the hearsay statement of the victim that she had been raped. The prosecutor stated he would not attempt to get Dr. Bryan to testify that the victim told him she had been raped. The trial court stated that, "I would naturally hope the prosecutor could avoid the doctor making this kind of statement." The court deferred ruling on the motion in limine.

The declaration of a mistrial necessarily and properly rests largely in the discretion of the trial court and an appellate court will disturb the action of the trial court only where we find a clear abuse of discretion. *State v. Carlos*, 549 S.W.2d 330, 332[1] (Mo. banc 1977). We find no such abuse of discretion in the present case. The trial court sustained defendant's objection because of its leading form and determined that the question and answer, although improper, were not prejudicial enough to warrant a mistrial. Further, the trial court instructed the jury to disregard the prosecutor's question and Dr. Bryan's answer. The victim had testified on at least four separate occasions that the defendant had raped her. Thus the question and answer cannot be seen as so seriously prejudicial as to warrant a mistrial.

■ Defendant contends that the trial court erred in denying his oral motion in limine concerning the State's anticipated rebuttal testimony of the victim and Officer Nancy Hightshoe. After a denial of a motion in limine, a timely objection is required at trial to preserve the point for appellate review. *State v. Johnson*, 586 S.W.2d 437, 440[1] (Mo.App.1979). At trial defendant

made six objections during the rebuttal testimony of Officer Hightshoe on the grounds of leading questions, irrelevance, and on one occasion, improper rebuttal. The trial court sustained four of these objections. At the conclusion of the testimony of each witness, defendant moved that the entire testimony be stricken as improper rebuttal. Defendant, however, did not object at the time the testimony of each witness was offered. Without such an objection this point cannot be successfully urged on appeal. *Johnson, supra* at 440. Although defendant has not properly preserved this point for review, this court may in its discretion review this point under the plain error rule. Rule 29.-12(b). Rule 29.12(b) allows the court to consider on appeal plain error affecting substantial rights, though the alleged error is defectively preserved when it deems that manifest injustice or miscarriage of justice has resulted. A review of the rebuttal testimony shows no manifest injustice or miscarriage of justice. This point is ruled against defendant.

■ Defendant's fourteenth point contends that the trial court erred in not reading cautionary instruction MAI–CR 1.08(b) prior to the morning recess on August 22, 1979. The trial began on the morning of August 20, 1979. The jury was sworn in on August 21, 1979, and the court read MAI–CR 1.08(a) as follows:

"It is the Court's duty to instruct you now upon a matter about which you will be reminded at each recess or adjournment of the Court. Until his case is given to you to decide you must not discuss any subject connected with the trial among yourselves, or form, or express any opinion about it. And until you are discharged as jurors, you must not talk with others about the case, or permit them to discuss it with you or in your hearing, or read, view, or listen to any newspaper, or television report of the trial.

"The bailiff and other officers of the Court are not permitted to talk to you

about any subject connected with the case, and you are not permitted to talk to them about it."

Nine recesses were held during the course of the trial—two on August 21, four on August 22, and three on August 23, 1979. Prior to eight of these recesses, the court admonished the jury by reading MAI–CR 1.08(b) as follows:

"The Court again reminds you of what you were told at the first recess of the Court. Until you retire to consider your verdict, you must not discuss this case among yourselves, or with others, or permit anyone to discuss it in your hearing. You are not to form or express any opinion about the case until it is finally given to you to decide."

Defendant relies on Rule 28.02(a) which requires the trial court to read MAI–CR 1.08 to the jury before each recess or adjournment of the court. Rule 28.02(e) states that "giving or failing to give an instruction . . . shall constitute error, its prejudicial effect to be judicially determined." A similar issue was raised on appeal in the case of *State v. Abbott*, 547 S.W.2d 853 (Mo.App. 1977). The court in *Abbott, supra*, found that the trial court's failure to admonish the jury prior to a noon recess was nonprejudicial and harmless error where the jury was given such admonition at prior and subsequent recesses and defense counsel did not object to the omission or ask that the instruction be given until his motion for new trial. *Abbott, supra* at 857. In the present case the trial court admonished the jury at prior and subsequent recesses. The defendant did not object to the failure of the trial court to read the instruction nor ask that it be given until his motion for new trial. This point is ruled against defendant.

In his fifteenth point defendant assigns error to the trial court's refusal to give his proffered cautionary instruction on identification. This was a lengthy nine-paragraph instruction centering on the frailties of observation and recollection of personal identification and requiring accu-

racy of identification beyond a reasonable doubt. The jury was properly instructed by the verdict-directing instruction, the "alibi" instruction MAI–CR 3.20, MAI–CR 2.01 and MAI–CR 2.20. These instructions fully submit defendant's theory of mistaken identity. *State v. Quinn*, 594 S.W.2d 599, 604[11] (Mo. banc 1980).

Defendant's last point on appeal is that the trial court erred in denying a mistrial when one of the jurors informed the court during deliberations on the verdict that he had not heard a substantial part of the victim's testimony during the trial. The note from the jury foreman read: "Judge, one of the jurors says he did not hear a substantial part of the victim's testimony due to a hearing problem. What can we do?" The record shows that the trial court assumed that the particular juror was venireman Williams in that during voir dire this venireman stated he had a slight hearing defect. The court responded to the note in writing that the jury must be guided by the instructions and the evidence. The court also determined that a mistrial was not warranted.

Defendant contends that the trial court committed reversible error in permitting this juror to be sworn in over objection. The record shows that venireman Edward Williams admitted having a slight hearing problem during voir dire. Defendant, however, did not object to the swearing in of venireman Edward Williams because of a hearing defect. The disqualification of a juror because of an alleged hearing defect must be raised before that juror is sworn to try the case. Section 494.050, RSMo 1978; *State v. Schleicher*, 442 S.W.2d 19, 21[4] (Mo.1969). Defendant's reference to the making of an objection to venireman Edward Williams as a juror would seem to apply to venireman Ronnie Williams. The State had requested that venireman Ronnie Williams be struck for cause. This request was in no way connected with the hearing defect. No objection was made to the qualifications of

venireman Edward Williams before he was sworn as a juror. Defendant cannot now complain he was denied a fair trial and denied due process of law. It should also be pointed out the record did not support the conclusion that Edward Williams was the juror who had not heard a part of what the witness said nor what part of her testimony.

The judgment is affirmed.

PUDLOWSKI, P. J., and GUNN, J., concur.